IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.                                                                   No. CR 07-1168 BB

**RUBEN SOTO MENDOZA** and
**ANTHONY TAFOYA**,

       Defendants.

## MEMORANDUM OPINION

The Court recently directed the parties to file briefs discussing whether a newly-decided Tenth Circuit case, *U.S. v. Valadez-Valadez*, 525 F.3d 987 (2008), requires the Court to reconsider its prior ruling on Defendants' motion to suppress. The United States and both Defendants have filed the requested briefs. All parties addressed the *Valadez* issue, and Defendants both addressed an additional question not raised in the Court's briefing order -- whether they should be allowed to withdraw their guilty pleas if the suppression decision is reversed. As discussed below, the Court finds *Valadez* to be controlling, and consequently the Court's prior denial of Defendants' motions to suppress must be reversed. However, because the United States has not had an opportunity to address the question concerning the impact of Defendants' guilty pleas, the Court will allow the United States such an opportunity before deciding what relief is appropriate in this case.

**Relevant Facts**

The testimony of the officer who made the stop in this case, Officer Hermilo Lucero, was as follows. At about 6:00 a.m. Officer Lucero was driving east on Interstate 40, in a rural area near Grants, New Mexico. He came up behind Defendants' vehicle in the "slow" lane, the right-hand

lane. After a short time, Defendants[1] switched to the "fast" or left-hand lane of the interstate, while Officer Lucero stayed in the right-hand lane. Defendants were traveling approximately 70 or 71 miles per hour, and the speed limit on that portion of the highway was 75 miles per hour. Rather than passing Defendants, Officer Lucero stayed in tandem with them for approximately three miles. Officer Lucero "finally" looked in his driver's side mirror and saw four or five cars traveling behind Defendants' vehicle in the left-hand lane. Officer Lucero then slowed down to allow Defendants to move back over to the right-hand lane; when Defendants failed to do so, Officer Lucero made a traffic stop because in his opinion Defendants had committed the offense of "impeding traffic" under New Mexico law.

Following the suppression hearing this Court found that Officer Lucero did indeed have reasonable suspicion that Defendants had been impeding traffic in violation of NMSA 1978, § 66-7-305(A). For that reason, the Court upheld the initial stop of Defendants' vehicle. The Court also rejected Defendants' other arguments at the suppression hearing and denied the motion to suppress. Subsequently, both Defendants entered plea agreements and pled guilty to Counts 1 and 2 of the indictment. Defendant Tafoya specifically reserved the right to appeal the denial of the motion to suppress, in paragraph 15 of the plea agreement. [Doc. 68] Defendant Mendoza's plea agreement does not contain such a reservation. [Doc. 77]

**Discussion**

**Reasonable Suspicion of a Traffic Violation:** The offense of impeding traffic is defined in NMSA 1978 § 66-7-305(A), which states that a person "shall not drive a motor vehicle at such a slow speed as to impede the **normal and reasonable movement of traffic**... ." (emphasis added).

---

[1] Obviously both Defendants were not driving the vehicle; the Court refers to Defendants in the plural merely for convenience.

In *Valadez-Valadez*, the Tenth Circuit held that a New Mexico State Patrol officer did not have reasonable suspicion that impeding traffic had occurred, under the following facts: (1) the suspect driver was traveling 10 miles per hour below the posted speed limit of 55 miles per hour; (2) the driver was on a two-lane, non-divided highway; (3) the officer followed the suspect driver for several miles, and the driver failed to increase his speed at any time; and (4) at some point another vehicle came up behind the officer and remained behind his vehicle until the officer stopped the suspect driver. The Tenth Circuit noted that the officer did not testify he would have been unable to safely pass the suspect driver at some point during the encounter, if he had attempted to do so. 525 F.3d at 992.

      The Court finds it impossible to distinguish the facts of this case from the *Valadez* case. If anything, there was less indication in this case that a traffic offense had occurred. Defendants were traveling only 4 or 5 miles per hour below the speed limit, on an interstate highway with two available lanes in each direction and a speed limit of 75 miles per hour. A speed of 70 or 71 miles per hour can hardly be said to be impeding the "normal and reasonable movement of traffic" as the statute requires. To hold otherwise would be tantamount to holding that all drivers on an interstate highway have a right to drive the speed limit, and anything below that limit (which after all is supposed to be an upper limit, not a required speed) is not normal and reasonable movement of traffic. This is not a reasonable interpretation of the impeding-traffic statute, as *Valadez* and the cases cited therein establish.

      The United States points out that in this case, unlike in *Valadez*, there was testimony that four or five cars were lined up behind Defendants. There are three problems with this argument. First, Officer Lucero did not testify how long the cars had been traveling behind Defendants; he simply stated he "finally" looked in his mirror, noticed the cars, and then stopped Defendants almost

3

immediately. Second, there is no apparent reason the cars in the left lane could not have moved over to the right lane and passed Defendants, unless Officer Lucero himself was traveling in such a way as to prevent that from occurring. He provided no testimony indicating there was any reason why the cars could not have passed on the right, especially after he noticed the cars and slowed down to allow Defendants to move back into the right lane.[2] Finally, even if Defendants and Officer Lucero in tandem were preventing these four or five cars from traveling faster than 70 or 71 miles per hour, as discussed above that speed is "normal and reasonable" when the maximum speed limit is 75 miles per hour. As a matter of law, therefore, Defendants were not impeding traffic by traveling that speed on the interstate.

The United States also contends that even if Defendants were not impeding traffic, they violated a different provision of the traffic code by remaining in the left-hand lane instead of moving over to the right-hand lane. The applicable provision states that "[u]pon all roadways any vehicle proceeding **at less than the normal speed of traffic** at the time and place ... shall be driven in the right-hand lane then available for traffic... ." (emphasis added). This provision, therefore, has the same requirement of "normal" speed as the impeding-traffic provision. As with that provision, a speed of 70 or 71 miles per hour in a 75-miles-per-hour speed zone cannot be said to be less than the "normal" speed for that highway. For this reason, the United States cannot rely on this alternate traffic offense to support the stop.[3]

---

[2] The Court notes that on a four-lane, divided highway, passing on the right is completely legal in New Mexico. NMSA 1978, § 66-7-311(3). It is, however, possible the other motorists (as well as Defendants) were unwilling to pass a marked state police cruiser when traveling at a rate so close to the speed limit.

[3] The Court notes this alternate offense was not the basis for Officer Lucero's stop of Defendants, although he did answer one question at the suppression hearing and indicated it is a traffic violation to travel continuously in the fast lane, unless one is overtaking a vehicle. This does not appear to be an accurate understanding of § 66-7-308(B) as applied to an interstate highway, as

**Effect of Defendants' Plea Agreements:**  As noted above, both Defendants addressed this issue in their briefs, arguing they should be allowed to withdraw their pleas if the Court decides to grant their motion to suppress.  Defendant Tafoya has a stronger argument, since he reserved the right to appeal the Court's suppression decision.  *See, e.g.,* Fed. Rule of Crim. Proc. 11(a)(2) (authorizing conditional pleas and withdrawal of such a plea should the defendant prevail on appeal). As to Defendant Mendoza, the Court must decide whether the protection of his Fourth Amendment rights should outweigh his failure to preserve the right to request review of the Court's prior ruling. The Court does not wish to decide whether to allow one or both Defendants to withdraw their pleas without first hearing from the United States on the question.  Therefore, the Court will allow the United States ten days in which to file a brief addressing the effect, if any, of Defendants' guilty pleas now that the Court is reversing its prior decision finding the stop of Defendants' vehicle to be constitutionally permissible.

**Conclusion**

Based on the foregoing discussion, the Court will grant Defendants' motion to suppress (Doc. 33).  The Court will allow the United States ten days in which to file a brief addressing the question of whether Defendants should be allowed to withdraw the guilty pleas they have entered in this case.

Dated this 5th day of August, 2008.

*[signature: Bruce D. Black]*
BRUCE D. BLACK
United States District Judge

---

it omits the question of whether the driver in the left-hand lane is traveling at a normal speed.